NO. 07-08-0483-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JANUARY 8, 2010
_____

IN THE INTEREST OF T.A.N., A CHILD
_____

FROM THE 251ST DISTRICT COURT OF RANDALL COUNTY;

NO. 34,964-C; HONORABLE ANA ESTEVEZ, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellant, Bobby Don Nokes, appeals an Order in Suit to Modify Parent-Child Relationship that found that Nokes's son, Thomas, is disabled and ordered Nokes to pay current and retroactive child support. We will reverse and remand in part and affirm in part.

Background

Nokes and Tammie Fay Browning, appellee, divorced in 1991 and Browning was awarded primary conservatorship of their three children. Soon after the divorce, Thomas, the youngest child, was diagnosed with osteosarcoma, a form of cancer, which manifested itself in his left leg. Thomas underwent surgery to remove the cancer, chemotherapy, and

subsequent surgeries to accommodate for growth of the leg. Thomas was making satisfactory progress in recovering from the cancer until he suffered an accident at a Wal-Mart store when he was 11 years old. The accident significantly set back Thomas's progress.

Following this accident, Wal-Mart settled Thomas's personal injury claims. The settlement paid Thomas a lump sum payment of $478,000. This money was used to pay attorney's fees, medical bills, and to purchase Thomas a house that was held in trust. Additionally, beginning September 1, 2006, Thomas began to receive an annuity that paid him $540 per month, increasing at three percent compounded annually. The settlement also provided that, on July 1, 2007, Thomas would begin to receive eight biennial payments of $10,000. After those payments are exhausted, Thomas will receive payments of $12,000 every five years for the remainder of his life. Thus, at the time of the hearing on the present matter, Thomas was receiving approximately $550 per month as well as two $10,000 payments every six months. In addition, upon turning 18 years old, Thomas's trustee deeded the house to Thomas.

Nokes paid child support as ordered until Thomas turned 18, at which time the child support withholding was terminated by the Attorney General's Office. Soon after Thomas turned 18, Nokes terminated Thomas's health insurance coverage. Browning filed a Petition to Modify that requested the trial court to continue child support and insurance coverage beyond Thomas's 18th birthday due to Thomas's disability.

At the hearing on the modification request, Thomas's doctor, Dr. Bush,[1] testified that Thomas's left leg was significantly shorter than his right leg and that his skin is very fragile due to the numerous surgeries that he has had on the leg. Dr. Bush testified that these conditions may be improved in the future, but they will remain problems for the rest of Thomas's life. Dr. Bush further testified that Thomas would not be able to walk a mile without assistance; his muscles have atrophied causing Thomas to be unable to do many things that others can do; his ability to walk is limited due to his left leg being shorter than his right leg which will cause other problems by throwing off Thomas's normal mechanics; and the only kind of work that Thomas could do would be sedentary work and, even then, Thomas would have problems because he can not sit for extended periods of time. In addition, Dr. Bush testified that Thomas is likely to have between three and ten additional surgeries in his lifetime. Browning and Thomas testified that Thomas suffers tremendous pain as a result of many of the procedures that he has to have performed and that the pain limits his ability to concentrate. Further, they testified that Thomas has to have significant assistance with even simple tasks, like putting on his socks, for some period of time immediately following surgeries. While the terms of Thomas's settlement with Wal-Mart were proven at the hearing, there was also evidence offered of the cost of Thomas's ongoing medical treatments and adaptive equipment, such as a pair of shoes costing $1,000. Evidence was admitted that established that Thomas has made gifts to his

---

[1] The record alternates between referring to the doctor as "Dr. Buch" and "Dr. Bush," however, it is clear that both references are to the same person. In this opinion, we will refer to the doctor as Dr. Bush.

3

mother, stepfather, and stepsister out of the money he has received through his Wal-Mart settlement.

At the conclusion of the hearing, the trial court found that Thomas requires substantial care and personal supervision because of a physical disability and is not capable of self-support and the disability existed on or before Thomas's 18th birthday. The trial court ruled that Nokes was responsible for retroactive child support from September of 2006 until May of 2007, when Thomas graduated from his home schooling and obtained his GED. The trial court further ordered that current support would start in July of 2008 and would be set at $300 per month until Thomas entered college at which time the support "will increase to the normal child support for one child . . . ." The trial court also ordered Nokes to maintain Thomas on Nokes's health insurance for "as long as you can carry it" and then, if Thomas acquires health insurance, both Nokes and Browning are ordered to pay one third of the premium. The trial court entered an order reflecting these rulings, however, the order states that, once Thomas enrolls in and attends college, Nokes's child support "shall increase to 20% of his net income, calculated as of his wages on July 1, 2008 . . . ." Nokes timely filed notice of appeal of this order.

Nokes appeals by four issues. By his first issue, Nokes contends that the trial court erred in failing to enter findings of fact and conclusions of law. By his second and third issues, Nokes contends that the evidence was legally and factually insufficient to support the trial court's finding that Thomas requires substantial care and personal supervision because of a physical disability and will not be capable of self-support. By his fourth issue,

4

Nokes contends that the trial court erred in setting Nokes's child support at 20 percent of his net income after Thomas enters college instead of setting an exact dollar amount.

Findings of Fact and Conclusions of Law

By his first issue, Nokes contends that the trial court erred in failing to enter requested findings of fact and conclusions of law. However, the trial court signed findings of fact and conclusions of law on January 9, 2009 and the same were filed with the district clerk on January 19, 2009. These findings and conclusions are part of the appellate record. Consequently, Nokes's first issue is moot.

Legal and Factual Sufficiency

By his second and third issues, Nokes contends that the evidence was legally and factually insufficient to support the trial court's finding that Thomas requires substantial care and personal supervision because of a physical disability and will not be capable of self-support. A trial court can order a parent to provide for the support of a child for an indefinite period if the court finds that the child requires substantial care and personal supervision because of a mental or physical disability and will not be capable of self-support and the disability exists on or before the 18th birthday of the child. See TEX. FAM. CODE ANN. § 154.302(a) (Vernon 2008). Thus, Nokes's second and third issues challenge the evidentiary basis for the trial court's continuing Nokes's child support for Thomas. Specifically, Nokes challenges the sufficiency of the evidence to support: (1) that Thomas requires substantial care and personal supervision because of physical disability and (2) that Thomas will not be capable of self-support.

Findings of fact in a case tried to the court have the same force and dignity as a jury's verdict upon jury questions and are reviewable for legal and factual sufficiency. Anderson v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991). When an appellant challenges the legal sufficiency of an adverse finding on an issue for which he did not have the burden of proof, he must demonstrate that there is no evidence to support the adverse finding. Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983). In a legal sufficiency review, we must view the evidence in the light most favorable to the finding. Wal-Mart Stores, Inc. v. Miller, 102 S.W.3d 706, 709 (Tex. 2003). Viewing the evidence through this prism, we must ultimately determine whether the evidence is sufficient to enable reasonable and fair-minded people to reach the verdict under review. City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). In reviewing factual sufficiency on an issue on which appellant did not have the burden of proof, we consider and weigh all of the evidence in a neutral light and set aside the judgment only if the evidence that supports the challenged finding is so weak as to make the judgment clearly wrong and manifestly unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). While we review the factual sufficiency of the evidence in a neutral light, the fact finder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. See Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003). An appellate court may not impose its own opinion to the contrary of the fact finder's implicit credibility determinations. See id.

Considering the legal sufficiency of the evidence to support the trial court's determination that Thomas requires substantial care and personal supervision, there is evidence in the record that Thomas will be severely limited in his ability to care for himself

6

during periods immediately following surgeries and that Thomas is likely to have between three and ten surgeries during the remainder of his life. Thomas was scheduled to have one of these surgeries very soon after the modification hearing. In addition, evidence was presented that Thomas would be unable or would be severely limited in his ability to do certain mundane but necessary activities, such as shopping for groceries. Thomas testified that he would be unable to drive himself to and from Dallas, where the bulk of his medical care is provided. In fact, Thomas cannot drive when he is on pain medication, which he takes as needed, and he is unable to predict when he will need to be on his pain medication. Considering this evidence, we cannot say that the evidence was insufficient to enable reasonable and fair-minded people to reach the verdict under review. City of Keller, 168 S.W.3d at 827.

Turning to the legal sufficiency of the evidence to establish that Thomas will not be capable of being self-supporting, there was evidence presented that Thomas has substantial medical expenses for both treatment and adaptive equipment. For example, Thomas had a hip and femur replacement surgery in January of 2007 that cost $223,548.41. Evidence was presented that a pair of shoes for Thomas costs around $1,000. Even when Nokes had Thomas on his health insurance, evidence was presented that Thomas's uninsured medical expenses each year were between $60,000 and $70,000. In addition, evidence established that Thomas could only work a sedentary position. The evidence, viewed in the light most favorable to the verdict, supports the trial court's determination that Thomas would be incapable of self-support.

7

Nokes contends that the evidence is factually insufficient to establish that Thomas needs continuous care and personal supervision. However, the statutory requirement is not that Thomas requires continuous care, only that he requires substantial care. See TEX. FAM. CODE ANN. § 154.302(a). In his brief, Nokes concedes that there are times that Thomas needs substantial care and supervision, but that there are "long periods of time" when Thomas does not need substantial care or any personal supervision. While the evidence does not reflect that there are long periods of time when Thomas does not need substantial care, the evidence does establish that there are times when Thomas requires substantial care and, further, the evidence establishes that these times will recur in the future. While there are times when Thomas may be capable of caring for himself, when he has to take his pain medication, he is incapable of driving himself and must rely on the assistance of his family. Because Thomas is incapable of predicting when he will need to be on pain medication, in this respect, he is in need of continuous care. However, again, the statutory standard requires that Thomas need substantial care and not continuous care. Thus, we conclude that the evidence is factually sufficient to support that Thomas needs substantial care and personal supervision.

Nokes also contends that the evidence is factually insufficient to support the determination that Thomas is incapable of self-support. Nokes's contention centers on Thomas's ability to be financially self-sufficient. Nokes argues that the evidence establishes that Thomas has only two financial responsibilities, $2,800 per year in property taxes on his house and $350 per month for his vehicle payment, while having net monthly resources of $2,207.47. However, as acknowledged by Nokes, the trial court ruled that

8

Thomas is responsible for all out-of-pocket medical expenses. Even without considering prior outstanding medical bills, the evidence is such that it will certainly allow reasonable people to conclude that Thomas will be wholly unable to pay for out-of-pocket medical expenses, which typically runs around $60,000 to $70,000 per year when Thomas was insured by Nokes; needed adaptive equipment, such as $1,000 shoes; and transportation expenses for trips to and from Dallas. Further, the evidence establishes that Thomas will be unlikely to find a job that he can perform without a college degree. Consequently, we conclude that the evidence is factually sufficient to establish that Thomas is incapable of being self-supporting.

For the foregoing reasons, we overrule Nokes's second and third issues.

Indefinite Support Upon Thomas Entering College

By his fourth issue, Nokes contends that the trial court erred in setting Nokes's child support obligation after Thomas enters college at 20 percent of Nokes's net income, calculated as of his wages on July 1, 2008, rather than setting an exact dollar amount. An ambiguous, indefinite, or uncertain child support order will not support a judgment for arrearages and is unenforceable by contempt. See Templet v. Templet, 728 S.W.2d 844, 847 (Tex.App.–Beaumont 1987, no writ). As Browning points out in her brief, it appears that the trial court intended for Nokes to provide specific net income information as of July 1, 2008 and for the child support upon Thomas entering college to be set at 20 percent of this net income. However, the setting of this exact amount was not done. As the parties agree that the child support obligation arising upon Thomas entering college needs to be

9

made definite and as this provision of the order may not be enforced as written, we will reverse this portion of the order and remand to the trial court to set an exact amount for Nokes's child support obligation once Thomas enters college.

We sustain Nokes's fourth issue.

## Conclusion

We reverse that portion of the Order that sets Nokes's child support obligation upon Thomas entering college at 20 percent of Nokes's net income, calculated as of his wages on July 1, 2008, as determined by the Texas Family Code and remand to the trial court to set an exact dollar amount of that child support obligation. In all other respects, we affirm the Order.


Mackey K. Hancock
Justice